STATE of Utah, Plaintiff and
Respondent,

v.

Leland Thomas DeMILLE, Defendant
and Appellant.

No. 860532.

Supreme Court of Utah.

May 26, 1988.

J. MacArthur Wright, St. George, for
defendant and appellant.

David L. Wilkinson, Robert N. Parrish,
David J. Schwendiman, Salt Lake City, for
plaintiff and respondent.

ZIMMERMAN, Justice:

A jury found appellant Leland Thomas
DeMille guilty of second degree murder.
After the verdict was returned, DeMille
moved for a new trial. In support of this

motion, he submitted an affidavit of a juror, arguing that it showed the verdict to be unsound because of juror bias and misconduct. The trial court refused to consider the affidavit and denied the motion for a new trial. On appeal, DeMille argues that the evidence is insufficient to support the conviction and that the juror's affidavit should have been admitted under Utah Rule of Evidence 606(b). We reject DeMille's contentions and affirm the conviction.

At all relevant times, DeMille was living with one Jan Davies. Jan was separated from her husband and had custody of their three-year-old son, Ronald. On May 5, 1985, DeMille was at home with Ronald while his mother was at work. Sometime between 2:15 p.m. and 2:30 p.m., DeMille telephoned Jan and let Ronald talk with her. According to Jan, Ronald sounded fine at this point. At approximately 3:00 p.m., DeMille again telephoned Jan. He told her that something was wrong with Ronald. She immediately went home, found Ronald unconscious, and took him to the Dixie Medical Center emergency room. The boy was comatose at admission, having suffered a massive skull fracture and resultant brain injury. His condition worsened and he died four days later, on May 9, 1985.

DeMille was charged with second degree murder. Utah Code Ann. § 76–5–203(1)(c) (Supp.1985). DeMille took the stand at trial and admitted that he had sole custody and care of the boy on the afternoon in question. He testified that nothing out of the ordinary had happened to the boy during that period. Several alternative explanations for the injury were offered, all of which were based on the notion that it had occurred accidentally several days earlier and only evidenced itself on the afternoon in question. The State's medical experts testified that the injury was so massive it had to have been sustained within an hour of the time the boy was admitted to the hospital. The force required to cause the injury was described as being equivalent to the child's falling two stories and landing head first on concrete. The case went to the jury on instructions that only permitted them to find DeMille guilty of second degree murder or to acquit him.[1] The jury found DeMille guilty as charged.

After trial, DeMille moved for a new trial, arguing that a juror's affidavit showed that jurors were biased against DeMille and that there had been juror misconduct. The trial judge ruled the affidavit inadmissible under Utah Rule of Evidence 606(b) and denied the motion for a new trial.

On appeal, DeMille makes two claims: first, there was insufficient evidence to prove beyond a reasonable doubt that he had the mental state required for second degree murder; second, the juror's affidavit should have been admitted and a new trial granted.

■ Regarding his first point, DeMille argues that the evidence may be sufficient for the jury to find that he caused the child's death, but it is insufficient to permit the jury to infer that he had the mental state required by section 76–5–203. The mental state required for second degree murder, as described in the statute in effect at the time of the killing, is any one of the following:

(a) Intentionally or knowingly causes the death of another; or

(b) Intending to cause serious bodily injury to another, he commits an act clearly dangerous to human life that causes the death of another; or

(c) Acting under circumstances evidencing a depraved indifference to human life, he engaged in conduct which creates a grave risk of death to another and thereby causes the death of another; or

. . . .

Utah Code Ann. § 76–5–203(1) (Supp.1985). DeMille claims that none of these mental states are established by what was before the jury, which consisted of evidence from which one could infer, at most, that De-

---

1. DeMille and his counsel decided not to submit manslaughter or negligent homicide jury instructions. Therefore, the jury had to choose between a finding of second degree murder or acquittal.

Mille inflicted the injury that caused death. He contends that *State v. Bolsinger*, 699 P.2d 1214 (Utah 1985), stands for the proposition that evidence of conduct alone will not support a second degree murder conviction; there must be separate, legally sufficient evidence of intent. DeMille misreads *Bolsinger*. There we held only that under the facts of that case, the conduct of the defendant was sufficiently ambiguous and the death sufficiently unanticipatable that the jury could not draw an inference of the requisite intent from the conduct alone. *Id.* at 1219.

The present case is distinguishable. Expert testimony established that Ronald was injured while under DeMille's sole care and custody and that during that period he was struck by or against a blunt object with a force equivalent to a fall from a two- or three-story building. Viewing the evidence in a light most favorable to the jury's verdict, *State v. Tanner*, 675 P.2d 539, 550 (Utah 1983), we conclude that this evidence is sufficient to support the inference that DeMille, in inflicting the injury, acted with the mental state described in section 76-5-203.

DeMille's second argument on appeal is that the trial court should have admitted the juror's affidavit for the purpose of impeaching the verdict. He claims that the material in the affidavit is admissible under Utah Rule of Evidence 606(b) on two grounds: first, some jurors made statements during deliberations about their personal experiences which suggest they were biased against anyone accused of harming a child; second, some jurors considered information other than that presented at trial.

■ DeMille's first claim must be rejected. During voir dire, the jurors were not asked about experiences they may have had with child abuse or about biases they might have against one accused of harming a child. This is true despite the fact that DeMille's counsel was given an opportunity

to question the jurors, an opportunity he declined. Utah Rule of Criminal Procedure 18(c)(2) provides that all challenges to individual jurors shall be made, at the latest, before evidence is taken. Utah Code Ann. § 77-35-18(c)(2) (1982). In addition, Utah Rule of Criminal Procedure 12(d) provides:

> Failure of the defendant to timely raise defenses or objections or to make requests which must be made prior to trial or at the time set by the court shall constitute waiver thereof, but the court for cause shown may grant relief from such waiver.

Utah Code Ann. § 77-35-12(d) (1982). In *State v. Miller*, 674 P.2d 130, 131 (Utah 1983), we relied on rule 12(d) in holding that counsel, who had neither objected to the voir dire nor sought permission to inquire further into a prospective juror's biases, had waived a claim later raised that jurors were biased. We therefore hold that DeMille's failure to voir dire the jurors on this quite foreseeable issue or object to the trial court's failure to cover the issue constitutes a waiver and bars inquiry into the bias question.

■ DeMille's second basis for arguing that the affidavit should have been admitted is that it shows the jury considered factors other than the evidence presented at trial. Most prominent among the alleged improprieties is one juror's telling others during deliberations that she had prayed for a sign during closing argument as to DeMille's guilt. She claimed to have received a revelation that if defense counsel did not make eye contact with her when he presented his argument, DeMille was guilty—defense counsel did not make the requisite eye contact.

Under rule 606(b), a juror's testimony may not be used to attack a verdict unless that testimony shows that extraneous prejudicial information or outside influence came to the jury's attention and might have affected the result.[2] Our traditional policy

---

2. Utah Rule of Evidence 606(b) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may

has been to limit rather narrowly the grounds for impeaching a jury verdict. *See* Boyce & Kimball, *Utah Rules of Evidence 1983—Part II,* 1987 Utah L.Rev. 467, 479–80. Although rule 606(b) may alter the focus of analysis, *id.* at 481–84, the basic policy of limiting challenges remains. The reason for such a policy was explained in *Wheat v. Denver & R.G.W.R. Co.,* 122 Utah 418, 428, 250 P.2d 932, 937 (1952), *cert. denied,* 346 U.S. 896, 74 S.Ct. 218, 98 L.Ed. 397 (1953): "To permit litigants to get jurors to sign affidavits or testify to matters discussed in connection with their functions as jurors would open the door to inquiry into all matters of things which a losing litigant might consider improper...." *See also State v. Couch,* 635 P.2d 89, 95 (Utah 1981).

Under rule 606(b), our inquiry is limited to determining whether the proffered juror testimony tends to show that "extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." Utah R.Evid. 606(b). Defendant argues that when the juror who reported to have received an answer to her prayer communicated that fact to the other jurors, an "outside influence was brought to bear on any juror," therefore making the affidavit admissible. We disagree.

██ If we were to accept defendant's argument that supposed responses to prayer are within the meaning of the term "outside influence" in rule 606(b), we would implicitly be holding that it is improper for a juror to rely upon prayer, or supposed responses to prayer, during deliberations. Such a conclusion could well infringe upon the religious liberties of the jurors by imposing a religious test for service on a jury. *See* Utah Const. art. I, § 4.[3]

A juror is fit to serve if he or she can impartially weigh the evidence and apply the law to the facts as he or she finds them. *State v. Lafferty,* 749 P.2d 1239 (Utah 1988). Prayer is almost certainly a part of the personal decision-making process of many people, a process that is employed when serving on a jury. There is no necessary inconsistency between proper performance as a juror and reliance on prayer or supposed responses to prayer. So long as a juror is capable of fairly weighing the evidence and applying the law to the facts, one may not challenge that juror's decision on grounds that he or she may have reached it by aid of prayer or supposed responses to prayer. Therefore, we hold that under rule 606(b), prayer and supposed responses to prayer are not included within the meaning of the words "outside influence." Testimony that a juror has so acted is not admissible to challenge a verdict; the trial judge properly refused to consider the proffered affidavit.

We recognize that a juror might so abandon his or her judgment to what he or she perceives to be oracular signs as to be unable to fairly consider the evidence and properly apply the law. Such a person could be disqualified from serving for cause without offending article I, section 4 of the Utah Constitution. *See State v. Ball,* 685 P.2d 1055, 1057 (Utah 1984). However, this fact does not save defendant's challenge to the verdict for two reasons. First, the affidavit submitted in this case does not aver facts that would disqualify any juror. At most, it suggests that one juror may have been personally influenced by her own "revelation" and that she told others of her experience as one means of persuading them to her point of view. This is certainly not an illegitimate inter-juror dynamic.

testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

3. Article I, section 4 of the Utah Constitution provides:

> The rights of conscience shall never be infringed.... [N]o religious test shall be required as a qualification for any office of public trust or for any vote at any election; nor shall any person be incompetent as a witness or juror on account of religious belief or the absence thereof....

Second, even if the affidavit had shown that the juror in question was incapable of impartially weighing the facts and applying the law, the defendant is precluded from raising that issue by a post-trial affidavit. Rule 606(b) is designed to permit juror testimony only about extraneous material and outside influences that impact the jury verdict. A claim that a juror is so affected by religious conviction as to disqualify him or her from jury service does not fall within these exceptions; rather, it goes to the fitness of the person to serve on the jury, a matter that could and should have been raised at voir dire. Yet defense counsel did not raise the matter then, and any such claims were waived once the trial commenced. *See* Utah R.Crim.P. 12(d).

We have reviewed DeMille's other claims of jury misconduct supported by the affidavit and hold that the trial court did not err when it refused to consider the affidavit.

The conviction is affirmed.

HALL, C.J., HOWE, Associate C.J., and DURHAM, J., concur.

STEWART, Justice: (dissenting).

I respectfully dissent. I believe that this case should be remanded for a hearing and a determination as to whether one or more jurors based their vote in this case on what they thought was a divine indication of defendant's guilt.

A defendant is constitutionally entitled to a jury that determines guilt or innocence based on the evidence and the law presented to it. Verdicts decided on some other basis make the constitutionally guaranteed right to trial by jury a nullity. Indeed, a verdict that is rendered on the basis of supposed divine intervention is a throwback to the primitive days of trial by ordeal where, for example, the manner of healing of a severe burn inflicted on a party was deemed to be an indication of God's judgment.

Of course, a juror may seek divine guidance through prayer in reaching a decision, and courts have so recognized. *See State v. Rocco,* 119 Ariz. 27, 579 P.2d 65 (Ct.App. 1978); *State v. Graham,* 422 So.2d 123

(La.1982), *appeal dismissed,* 461 U.S. 950, 103 S.Ct. 2419, 77 L.Ed.2d 1309 (1983). But jurors are duty-bound to decide a case on the basis of the evidence presented at trial. *See Falls City v. Sperry,* 68 Neb. 420, 94 N.W. 529 (1903). *See also Murphy v. Graves,* 294 S.W.2d 29 (Mo.1956). *See generally* 58 Am.Jur.2d *New Trial,* § 90 (1971); 75 Am.Jur.2d *Trial,* § 1015 (1974).

However, here it is alleged that something other than the evidence was the basis of the verdict for at least one juror. In support of his motion for a new trial, defendant submitted the affidavit of a juror which stated:

5. Said juror, [juror's name], further stated to the affiant and the other jurors in said jury room during said deliberations, that while the defendant's attorney was giving his closing argument, she, [the juror], prayed, "... that if said attorney made eye contact with her she would know he was telling the truth, but if he did not she would know he was not telling the truth about defendant; that he did not make eye contact with her, so she knew said attorney was not telling the truth," concerning the defendant.

. . . .

7. Said juror, [name of juror], was one of the leaders, during the deliberations by the jury, of the faction seeking a speedy and early determination of guilt of the defendant.

Thus, the affidavit alleges that the juror received a divine indication of the right result, not divine guidance in assessing the evidence.

Sound reasons support the general policy against allowing impeachment of jury verdicts by attacking the mental processes used by jurors to arrive at a verdict. As long as the jurors purport to act on the basis of the facts and the law, no challenge is permissible, even if jurors may have acted on the basis of some alleged error or misunderstanding. But certainly verdicts are not absolutely inviolate. Verdicts based on chance or bribery, for example, have long been subject to challenge, since they do not even purport to be based on the law and the evidence. *See* Utah R.Civ.P.

59(a) (1987) (applicable to criminal proceedings by virtue of Rule 81(e)). Thus, if jurors were to agree that a verdict would be based on a "divine sign," a Ouija board answer, or some fortuitous event, such a verdict, in my judgment, would constitute a denial of due process and the right to trial by jury.

The trial judge ruled that Rule 606(b) of the Utah Rules of Evidence (1987) prohibited him from considering the allegations in the affidavit submitted by defendant.[1] Rule 606(b) governs the admissibility of juror testimony and affidavits for purposes of impeaching a jury verdict. The majority sustains that ruling, holding that "prayer and supposed responses to prayer are not included within the meaning of the words 'outside influence' " as used in Rule 606(b).

I believe the majority fails to draw a critical distinction between the legitimacy of jurors' seeking divine assistance in accurately and dispassionately weighing the evidence and the illegitimacy of jurors' abdicating their sworn duty to decide the case on the evidence and instead relying on some supposedly divine sign. Although "[a] juror is fit to serve if he or she can impartially weigh the evidence and apply the law to the facts as he or she finds them," as the majority observes, the fact appears to be that the juror in question did not impartially weigh the evidence and apply the law to the facts, but disregarded the evidence and the law and ruled on the basis of an "outside influence." Accordingly, the trial court could have relied on the affidavit under Rule 606(b) for the purpose of deciding that a hearing on the allegations should have been held. It is of particular significance that the juror in question is alleged to have been "one of the leaders" during the jury deliberations.

In my view, a verdict based on chance, like a verdict based on a supposed divine sign, falls within the meaning of the terms "extraneous prejudicial information" and "outside influence," as those terms are used in Rule 606(b) of the Rules of Evidence. If, therefore, the allegations of the affidavit are true, defendant would be entitled to a new trial under Rule 24 of the Utah Rules of Criminal Procedure.

I would remand the case to the trial court for an evidentiary hearing to determine whether the jurors decided the case on the evidence or whether there was reliance on factors outside the record.

---

1. Rule 606(b) of the Utah Rules of Evidence (1987) states:

   (b) Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, *except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.* Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.
   (Emphasis added.)