STATE of Utah, Plaintiff and
Respondent,

v.

Ralph TOLMAN, Claude Donald
Harman, Defendants and
Appellants.

No. 870407–CA.

Court of Appeals of Utah.

April 27, 1989.

Rehearing Denied May 22, 1989.

Loni F. DeLand, Scott W. Reed, Salt Lake City, for defendants and appellants.

R. Paul Van Dam, Dan R. Larsen, Salt Lake City, for plaintiff and respondent.

Before DAVIDSON, GARFF and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

Ralph Tolman (Tolman) appeals from his conviction of tampering with a witness, a class A misdemeanor in violation of Utah Code Ann. § 76–8–508 (1978), and official misconduct, a class B misdemeanor in violation of Utah Code Ann. § 76–8–201 (1978). Tolman raises numerous issues on appeal, including whether: 1) the evidence was sufficient to support the convictions; 2) the trial court erred in ruling that Tolman was not entitled to a preliminary hearing; 3) the trial court erred in admitting a transcript of Tolman's grand jury testimony at trial; and 4) the trial court erred in failing to consider juror affidavits concerning one juror's alleged divine revelation. We affirm the conviction of witness tampering and reverse the conviction of official misconduct.

## I. FACTS

"In setting out the facts from the record on appeal, we resolve all conflicts and

doubts in favor of the jury's verdict and the rulings of the trial court." *State v. Babbell*, 770 P.2d 987 (Utah 1989). Our statement of the facts, therefore, is set forth in conformance with *Babbell*.

In May 1983, a fire at the Fashion Place Professional Plaza in Murray, Utah caused extensive damage to the offices of the Salt Lake County mental health department. Dean C. Larsen (Larsen), Assistant Chief and Fire Marshall for the Murray City Fire Department, investigated the fire and reported that it originated in the mental health offices and was caused by misuse of a space heater and extension cord. The next day, Evan Stephens (Stephens), risk manager for Salt Lake County, asked the county attorney's office to investigate the fire. Claude Donald Harman (Harman), chief investigator for the county attorney's office, assigned Tolman and investigator Olin Yearby (Yearby) to assist in determining the cause and origin of the fire. Tolman and Yearby met with Larsen at the fire scene and investigated the fire. Afterwards, Tolman informed Stephens that he agreed with Larsen that the fire originated in the county offices. Stephens, who was concerned about the county's liability for the fire if it originated in the county's offices, wrote a letter to Harman, stating he was hiring Jim Ashby (Ashby) of Global Investigations to perform an independent investigation of the fire. Shortly thereafter, Tolman and Yearby ceased their investigation. In the meantime, a laboratory analyzed the extension cord and space heater and provided a report which stated that the heater could not have caused the fire because it was not energized at the time of the fire. On June 6, 1983, Ashby concluded that based on the laboratory analysis and his investigation, the fire originated in the attic above the county offices.

On August 1, 1983, Tolman submitted a seven-page report on the fire to his supervisor, Sam Dawson. The report concluded that the fire originated in the mental health department's offices. Dawson rejected the report. At Tolman's insistence, Dawson sent the report to Harman. Harman also rejected the report and ordered Tolman to prepare another report. Contrary to the county attorney's office policy of not releasing reports outside the office prior to approval by a supervisor, Tolman sent a copy of the seven-page report to Larsen. The testimony is conflicting regarding whether Tolman sent the report to Larsen before or after Harman rejected it. In any event, after Harman rejected the report, Tolman contacted Larsen, told him that Harman was angry about the contents of the report and asked him to destroy the report. Tolman also informed Larsen that he, Tolman, could get into trouble for releasing the report to Larsen. On August 25, 1983, Tolman submitted a one-page report on the fire to Harman, which did not include an opinion as to the fire's origin. Harman approved and filed the report.

In 1984, civil litigation regarding the fire was initiated. In November 1984, Larsen received a subpoena duces tecum requesting him to appear at a deposition with all records and documents relating to the fire at the Fashion Place Professional Plaza. Larsen did not produce Tolman's seven-page report at the deposition because he did not want to cause Tolman any problems. Larsen was again deposed in November 1985 and revealed the existence of Tolman's seven-page report.

In 1986, a grand jury was called to investigate possible criminal charges related to the alleged cover-up of reports regarding the 1983 fire at the Fashion Place Professional Plaza. On April 9, 1986, Tolman was called to testify before the grand jury. Prior to Tolman testifying, special prosecutors Rodney Snow and Larry Keller, and grand jury investigator Lorin C. Brooks met Tolman outside the grand jury room and advised him that he was the subject of the grand jury inquiry. Tolman stated that he did not realize he was a subject. Snow and Keller then told Tolman that he had the right to have counsel present outside the courtroom, that he could talk to an attorney before testifying, and that he could contact an attorney at any time during his testimony. Tolman said he had an attorney and that he was aware of his rights. He also stated he was willing to appear, despite the prosecutors' offer to postpone his

testimony. Tolman then took the witness stand, acknowledged that he had a right to counsel, and was informed that the investigation concerned the report he prepared regarding the fire at the Fashion Place Professional Plaza. About a month later, Tolman was again subpoenaed to testify before the grand jury and informed of his right to counsel.

On October 9, 1986, the grand jury indicted Tolman for tampering with evidence, tampering with a witness, official misconduct and criminal conspiracy. Prior to trial, Tolman's motion for a preliminary hearing was denied. After a three week trial, the jury retired to deliberate. Portions of Tolman's grand jury transcript were permitted to be taken into the jury room. The jury convicted Tolman of tampering with a witness and official misconduct. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

On appeal, Tolman claims the evidence was insufficient to support his convictions. When reviewing whether evidence is sufficient to support a jury conviction,

> we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury. We reverse a jury conviction for insufficient evidence only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted.

*State v. Booker*, 709 P.2d 342, 345 (Utah 1985) (quoting *State v. Petree*, 659 P.2d 443, 444 (Utah 1983); *State v. Bishop*, 753 P.2d 439, 479 (Utah 1988). We will not substitute our judgment for that of the jury as it is the "exclusive province of the jury to determine the credibility of the witnesses and weigh the evidence." *Steele v. Breinholt*, 747 P.2d 433, 436 (Utah Ct.App. 1987); *Booker*, 709 P.2d at 345.

### A. Witness Tampering

Our first inquiry is whether the evidence was sufficient to support Tolman's conviction of tampering with a witness under Utah Code Ann. § 76-8-508 (1978). Section 76-8-508 states:

> A person is guilty of a felony of the third degree if:
> (1) Believing that an official proceeding or investigation is pending or about to be instituted, he attempts to induce or otherwise cause a person to:
>
> ....
>
> (b) Withhold any testimony, information, document, or thing....

In order to satisfy the elements of section 76-8-508, the prosecution had to demonstrate that: 1) Tolman believed that an official proceeding or investigation was pending or about to be instituted. *See, e.g., State v. Bradley*, 752 P.2d 874, 877 (Utah 1988) (stating that section 76-8-508 does not require proof that an official investigation or proceeding was pending, but only that defendant believed such an investigation or proceeding was pending); and 2) Tolman knowingly or intentionally attempted to induce or otherwise cause another person to withhold any testimony, information, document, or thing.

In this case, Tolman was assigned to investigate the fire at the Fashion Place Professional Plaza and met with Yearby and Larsen at the scene of the fire to determine its cause. Tolman subsequently prepared an investigation report. Based on these facts, a juror could reasonably conclude Tolman believed that an official investigation was pending. In addition, Larsen testified that Tolman instructed him to destroy the report. Subsequently, Larsen withheld Tolman's seven-page report from a civil proceeding despite a subpoena duces tecum requiring him to produce the report. Larsen testified that he did not produce the report because he did not want to cause problems for Tolman. Based on that testimony, the jury could reasonably conclude that Tolman induced Larsen to withhold the report from an official investigation or proceeding. Although contrary evidence was presented, "[t]he existence of contra-

dictory evidence or conflicting inferences does not warrant disturbing the jury's verdict." *Id.* We, therefore, conclude that the record contains sufficient evidence from which the jury could conclude that Tolman knowingly or intentionally attempted to induce Larsen to withhold the seven-page report from an official investigation or proceeding. Thus, we affirm Tolman's conviction for witness tampering.

### B. Official Misconduct

■ We next consider whether the evidence is sufficient to support Tolman's conviction of official misconduct. Utah Code Ann. § 76–8–201 (1978) states:

A public servant is guilty of a class B misdemeanor if, with an intent to benefit himself or another or to harm another, he knowingly commits an unauthorized act which purports to be an act of his office, or knowingly refrains from performing a duty imposed on him by law or clearly inherent in the nature of his office.

To demonstrate a violation of section 76–8–201, the prosecution was required to prove that Tolman: 1) acted in his capacity as a public servant; 2) acted with an intent to benefit himself or another or to harm another; and 3) knowingly committed an unauthorized act which purported to be an act of his office or knowingly refrained from performing a duty imposed on him by law or clearly inherent in the nature of his office. We can find no evidence in the record to establish the third element, that Tolman committed an unauthorized act which purported to be an act of his office. Although Tolman may have committed an unauthorized act by distributing the seven-page report to Larsen in violation of office policy, there is no evidence that Tolman's act purported to be an act of his office. In fact, Larsen testified that Tolman told him he would be in trouble if Harman knew Larsen had received the report. In addition, we find no evidence that Tolman knowingly refrained from performing a duty imposed by law or inherent in the nature of his office. Therefore, because we find no evidence in the record to satisfy all elements of section 76–8–201, we re-

verse Tolman's conviction for official misconduct.

### III. PRELIMINARY HEARING

■ Tolman also claims the trial court erred in denying his request for a preliminary hearing. Article I, section 13 of the Utah Constitution provides:

Offenses heretofore required to be prosecuted by indictment, shall be prosecuted by information after examination and commitment by a magistrate, unless the examination be waived by the accused with the consent of the State, *or by indictment, with or without such examination and commitment.*

(Emphasis added).

Although the constitution provides that following indictment an examination and commitment by a magistrate is optional, Utah R.Crim.P. 7(c) states that a preliminary examination shall *not* be held if the defendant is indicted. Tolman claims that the statute clearly conflicts with the constitution and is, therefore, unconstitutional.

In order for a statute to be declared unconstitutional, a statute must "clearly violate some constitutional provision, and further, the violation must be clear, complete and unmistakable." *Trade Comm'n v. Skaggs Drug Centers, Inc.,* 21 Utah 2d 431, 446 P.2d 958, 961 (1968); *see also Zamora v. Draper,* 635 P.2d 78, 80 (Utah 1981). In examining statutory constitutionality, the court must apply every reasonable presumption favoring constitutionality, acknowledging the legislative prerogative to enact laws. *Id.,* 446 P.2d at 962; *Timpanogos Planning v. Central Utah Water,* 690 P.2d 562, 564–65 (Utah 1984). In addition, those who assert that a statute is unconstitutional bear the burden of demonstrating that it is unconstitutional. *Rio Algom Corp. v. San Juan County,* 681 P.2d 184, 191 (Utah 1984).

Article I, section 13 provides that a preliminary hearing may be held after prosecution by indictment, but is not required. The statute, however, states that a preliminary hearing shall not be held if a defendant is indicted. The constitution allows

the legislature the discretion, therefore, to prohibit preliminary hearings after indictment, and such prohibition falls within the constitutional language. As a result, the statute is not in direct conflict with the constitution.

## IV. GRAND JURY TESTIMONY

Tolman also asserts that the trial court erred in failing to suppress his grand jury testimony at trial. Tolman claims that his grand jury testimony was inadmissible because he was not informed of his right to counsel nor was he informed that he was the target of the investigation prior to testifying before the grand jury.

In reviewing a trial court's evidentiary rulings, we defer to the trial court's advantageous position and will not overturn its decisions absent an abuse of discretion. *Whitehead v. American Motors Sales Corp.*, 101 Utah Adv.Rep. 27, 28 (Feb. 2, 1989).

Utah Code Ann. § 77-11-3 (1982) provides:

> Any person called to testify before the grand jury may be advised of his right to be represented by counsel. If a witness is or becomes a subject of the investigation, he shall be advised of that fact and of his right to counsel, and of his privilege against self incrimination. On demand of a witness for representation by counsel, the proceedings shall be delayed until counsel is present.

In *State v. Ruggeri*, 19 Utah 2d 216, 429 P.2d 969, 975 (1967), the Utah Supreme Court stated that a witness, who was unaware that he was a target of a grand jury investigation, could not intelligently determine whether or not he needed counsel where he was not advised of the charges against him. In *Ruggeri*, the witness testified before the grand jury and was later indicted for alleged perjury committed during his grand jury testimony. The court held that because the witness was not aware that he was a target of the grand jury proceeding, the trial court properly excluded his grand jury testimony in his perjury trial. *Id.*

In this case, special prosecutors Rodney Snow and Larry Keller, and grand jury investigator Lorin C. Brooks met Tolman outside the grand jury room prior to his testimony and advised him that he was the subject of the grand jury inquiry. Tolman responded that he did not realize he was a subject. Snow and Keller then told Tolman that he had the right to have counsel present outside the courtroom, that he could talk to an attorney before testifying, and that if he wanted to contact an attorney at any time he could. Tolman responded that he had an attorney and that he was aware of his rights. He also stated he was willing to appear despite the prosecutors' offer to postpone his testimony. Tolman then took the witness stand and acknowledged that he had a right to counsel. About a month later, when Tolman again testified before the grand jury, he was again informed of his right to counsel. Unlike *Ruggeri*, Tolman knew he was a target of the grand jury investigation prior to testifying. In addition, he was informed of his right to counsel. Therefore, we hold that the trial court did not err in admitting Tolman's grand jury testimony into evidence.

## V. JUROR AFFIDAVITS

■ Tolman also asserts that his motion to arrest judgment should have been granted because a juror affidavit established that the verdict resulted from a divine revelation. Tolman contends that the trial court erred in ruling that the affidavit failed to show that an improper outside influence was present in the jury room.

Generally, a juror affidavit can only be used to impeach a jury verdict when: 1) the verdict was determined by chance or bribery, *Rosenlof v. Sullivan*, 676 P.2d 372, 375 (Utah 1983); *Hillier v. Lamborn*, 740 P.2d 300, 304 (Utah Ct.App.1987); or 2) when "extraneous prejudicial information was improperly brought to the jury's attention or an outside influence was improperly brought to bear upon any juror." Utah R.Evid. 606(b); *State v. DeMille*, 756 P.2d 81, 83 (Utah 1988); *Hillier*, 740 P.2d at 304. The reason for narrowly limiting the cir-

cumstances under which jury affidavits can be used to impeach a jury verdict is that otherwise, litigants would obtain juror affidavits on "all manner of things" and the process would become interminable and impracticable. *Wheat v. Denver & R.G.W.R. Co.*, 122 Utah 418, 250 P.2d 932, 937 (1952). Further, "[s]uch post mortems would be productive of no end of mischief and render service as a juror unbearable." *Id.*

In *State v. DeMille*, 756 P.2d 81 (Utah 1988), the Utah Supreme Court considered whether a juror's affidavit regarding a divine revelation could be used to impeach the jury's verdict under Utah R.Evid. 606(b). In *DeMille*, a juror affidavit stated that one juror allegedly told another juror during deliberations that she had prayed for a sign during closing argument as to DeMille's guilt and claimed to have received a revelation that if defense counsel did not make eye contact, DeMille was guilty. Defense counsel did not make eye contact and DeMille was found guilty.

In reviewing whether the juror affidavit should have been admitted under Utah R.Evid. 606(b), the court stated that construing "outside influence" to include responses to prayer could well infringe upon the juror's religious liberties. *Id.* at 84. The court stated that as long as the juror can fairly weigh the evidence and apply the law to the facts, the juror's decision cannot be challenged on the ground that the juror reached the decision by aid of prayer. *Id.* Accordingly, the court held that under Rule 606(b), prayer and supposed responses to prayer are not included within the meaning of the words "outside influence." *Id.* The court also noted, however, that a juror might be disqualified from service if he or she is unable to fairly consider the evidence and properly apply the law due to oracular signs. *Id.* The court then found that this fact did not save DeMille's challenge to the verdict for two reasons. *Id.* First, the affidavit did not aver facts which would disqualify a juror. Second, even if the affidavit averred such facts, the court stated,

> [a] claim that a juror is so affected by religious conviction as to disqualify him or her from service does not fall within

these exceptions [Rule 606(b)]; rather it goes to the fitness of the person to serve on the jury, a matter that could and should have been raised at voir dire.

*Id.* at 85.

Applying the law to the facts in this case, we need not reach whether the affidavit alleged facts that would disqualify any juror because, according to *DeMille*, juror affidavits regarding divine revelations do not fall within the exception set forth in Rule 606(b). Therefore, we hold that the trial court did not err in excluding the juror affidavit.

We have examined the other issues raised in this appeal and conclude that those issues are without merit. Affirmed in part and reversed in part.

GARFF, J., concurs.

DAVIDSON, J., concurs in the result.