**Tulane T. THOMPSON, by the Executor of her Estate, Robert THOMPSON, and Robert Thompson and Jeffrey Thompson, individually, Plaintiffs,**

v.

**PAPASTAVROS ASSOCIATES MEDICAL IMAGING, L.L.C., a Delaware Limited Liability company, and Majid Mansoory, M.D. Defendants.**

No. 96C–06–030 SCD.

Superior Court of Delaware, New Castle County.

Submitted: April 2, 1998.
Decided: June 25, 1998.

---

Randall E. Robbins, of Ashby & Geddes, Wilmington, for Plaintiffs Tulane Thompson, Robert Thompson, and Jeffrey Thompson.

Anne L. Naczi, of Tybout Redfearn & Pell, Wilmington, and Mason E. Turner, Jr., of Prickett Jones Elliot Kristol & Schnee, Wilmington, for defendants Papastavros Associates Medical Imaging and Dr. Majid Mansoory.

## MEMORANDUM OPINION

DEL PESCO, Judge.

Plaintiffs brought a wrongful action against Defendants alleging medical malpractice. A trial was held in February

1998. In its verdict, the jury found that Dr. Majid Mansoory committed malpractice but that his malpractice was not a proximate cause of Tulane Thompson's death. Plaintiffs now seek a new trial on three separate grounds:

i) The verdict is contradicted by the great weight of the evidence.

ii) Juror misconduct compromised the verdict.

iii) Improper and abusive conduct by Defendants denied Plaintiffs a fair trial.

On the Plaintiffs' first claim, I find that the verdict is not contradicted by the great weight of the evidence. Both sides presented highly skilled experts who expressed contradictory conclusions as to standard of care and causation. The jury resolved the factual issues. Next, the hearsay testimony about two jurors' expressions of personal biases during deliberations does not require further inquiry, nor does it demonstrate that Plaintiffs' right to a fair and impartial jury was compromised. Finally, I find that defense counsel's conduct does not warrant a new trial.

## The Jury's Verdict and the Weight of Evidence

In October 1995, the decedent, Tulane Thompson, went to her family doctor to report the recurrence of respiratory symptoms including a persistent cough and hemoptysis (coughing up of blood). A chest x-ray was ordered and read as abnormal; she had lung cancer. She was referred to a surgeon, Dr. Bruce Panasuk. It was Dr. Panasuk's practice to review films prior to interviewing a patient. When he reviewed Mrs. Thompson's films, he compared the October 1995 film with one taken eight months earlier and concluded that the radiologist who read the January 1995 film had missed an obvious lesion. Dr. Panasuk commenced treatment of Mrs. Thompson. Subsequently, when he felt it appropriate, Dr. Panasuk shared his views about the earlier film with Mrs. Thompson and her family. That, in a nutshell, was the genesis of this lawsuit.

Both the January 1995 x-ray and the October 1995 x-ray were taken at Papastavros Associates Medical Imaging. The first was read by Dr. Mansoory; the second by Dr. Stephen Karasick.

The allegations against Dr. Mansoory and Papastavros were that Dr. Mansoory had violated the standard of care by not detecting an obvious lesion in the January 1995 x-ray which would have lead to an earlier diagnosis of Mrs. Thompson's lung cancer. The claim of damages was predicated on the assertion that Mrs. Thompson suffered a substantial loss of chance of cure as a result of the delay in diagnosing her lung cancer.

The Plaintiffs, Mrs. Thompson's husband, Robert Thompson, and her son, Jeffrey Thompson, presented testimony from highly qualified expert witnesses who testified that the lesion on the January 1995 x-ray was obvious, not subtle. Failure to recognize a subtle lesion does not violate the standard of care for radiologists; failure to recognize an obvious lesion does. Plaintiffs contended that Mrs. Thompson's chances of cure were compromised from 60–80% to 20–30% as a result of the eight-month delay in diagnosis.

The Defendants presented testimony from highly qualified expert witnesses who testified that the lesion on the January 1995 x-ray was subtle and difficult to see because it was located in an area of the anatomy where there is an overlapping of the heart and the lung. They further testified: that the overall survival rate for individuals with lung cancer is low, 5–10%; that Mrs. Thompson's cancer was an aggressive type; that she had already suffered brain metastasis by January 1995; and that the delay in diagnosing her cancer did not have a significant effect on the course of her illness. To support those contentions the experts offered extensive testimony regarding the biology of a can-

cer cell. Defendants' experts explained that on rare occasions, such as this, when physicians have the opportunity to compare the size of a lesions at two points in time, they can calculate the doubling time of the tumor and, retrospectively, determine the age of the cancer. The retrospective look at Mrs. Thompson's cancer supported the conclusion that her cancer, which was variously described as 2.5 to 3.0 cm in size in January and 6.5 to 7.0 cm in October, was growing at a rate which demonstrated that it had already reached the size of probable metastasis before the January 1995 x-ray.

The Plaintiffs vigorously attacked the testimony regarding tumor doubling time and pointed out that it is not the type of information which forms the basis for treatment decisions. Furthermore, it is unreliable because there are multiple factors which affect doubling time, including the type of cancer, the condition of the immune system, the nutritional status of the patient, and the availability of the blood supply.

 A new trial may be ordered when the jury's verdict goes against the great weight of the evidence.[1] It is not a sufficient ground for a new trial that the verdict is merely against the preponderance of testimony, or that the court may have arrived at a different result.[2] The factual findings of a jury will not be disturbed if there is any competent evidence upon which the verdict could reasonably be based.[3] The Jury was asked to determine two things: First, whether or not Dr. Mansoory had violated the standard of care in reading the x-ray. Second, whether the violation of the standard of care was the proximate cause of injury. As to the first question, the verdict was Yes; as to the second question, the verdict was No. In the instant case, the conclusions of the jury are supported by substantial medical evidence and are not against the weight of the evidence.

### Juror Misconduct / Compromise Verdict

The Plaintiffs' second claim, juror misconduct or compromise verdict, arises from allegations made in an affidavit by Nancy A. Haile, a paralegal employed by Plaintiffs' counsel who sat in the back of the courtroom assisting counsel everyday during trial. Ms. Haile asserts, in pertinent part, that a week after the verdict,

2. [o]n Saturday, February 28, 1998, at approximately 12:00 p.m., I was at the Food Court at the Christiana Mall. I was waiting for my husband, who was buying movie tickets, when Juror # 2 from the Thompson trial approached me.

3. She said that she felt terrible about the outcome of the Thompson case, and that there were two women on the jury who were "very religious and did not believe it was right to sue people." She said they were shocked to find out when they started to deliberate that these two jurors felt this way, and said, "we fought for three days" because they already had their minds made up that it is wrong to sue. As a result, she said there were "major compromises" made by the rest of the jury in order to reach a verdict.[4]

Based on the second-hand telling of this juror's dissatisfaction with the verdict and her allegations against the two other jurors, Plaintiffs contend that the two jurors gave untruthful answers to a voir dire question concerning bias or prejudice against awarding money damages,[5] were unwilling to base their verdict on the evi-

---

1. *Storey v. Camper.*, Del.Supr., 401 A.2d 458, 465 (1979).

2. *McCloskey v. McKelvey*, Del.Super., 174 A.2d 691, 696 (1961).

3. *Mercedes–Benz of North America, Inc. v. Norman Gershman's Things to Wear, Inc.*, Del. Supr., 596 A.2d 1358, 1362 (1991).

4. Affidavit of Nancy A. Haile, ¶¶ 2–3 (Mar. 3, 1998).

5. The voir dire question inquired:

dence of the case, and used the "*Allen* charge" to exact a compromise verdict from the rest of the jury.[6] Plaintiffs request that the Court investigate whether these two jurors falsely took their oaths by dishonestly responding during voir dire and argue that such juror misconduct provides the basis to set aside the verdict.[7]

Delaware law strongly disfavors a juror's impeachment of the verdict once the jury has been discharged.[8] This standard has been codified by Rule 606(b) of the Delaware Rules of Evidence.[9] This policy: i) discourages harassment of jurors by losing parties eager to have the verdict set aside; ii) encourages free and open discussion among jurors; iii) reduces incentives for jury tampering; iv) promotes verdict finality; and v) maintains the viability of the jury as a judicial decision-making body.[10]

Because our justice system is based on the principle that a jury's verdict will be induced only by evidence and argument in open court, it has been recognized that an absolute prohibition against receiving post-verdict testimony from jurors would contravene the important public policy of "redressing the injury of a private litigant where the verdict was reached by a jury that was not impartial."[11] To accommodate these two conflicting policies that would, on the one hand, preserve the sanctity of the jury's deliberations while, on the other, ensure the right to a verdict based only on competent evidence, the courts have distinguished between extrinsic and intrinsic influences on the jury's verdict.

■ Extrinsic, or extraneous, influences have been construed to include: i) exposure of jurors to news items about matters pending before the jury; ii) consideration by the jury of extra-record facts about the case; iii) communications relevant to the case to be decided between third parties and jurors; and iv) pressures or partiality on the part of the court.[12] Intrinsic influences have been construed to include dis-

---

Does any member of the panel have any bias or prejudice for or against awarding money damages in a lawsuit against a doctor based upon the evidence presented in the case.

6. After the jury reported a deadlock in deliberations, the Court gave an "*Allen* charge." The jury subsequently returned a unanimous defense verdict.

7. *Massey v. State*, Del.Supr., 541 A.2d 1254, 1256–57 (1988)(juror bias will not be tolerated).

8. *Sheeran v. State*, Del.Supr., 526 A.2d 886, 894 (1987); *Styler v. State*, Del.Supr., 417 A.2d 948, 952 (1980); *McLain v. General Motors Corp.*, 586 A.2d 647, 649–50 (1988); *State v. Watson*, Del.Super., 186 A.2d 543, 544 (1961), *aff'd*, Del.Supr., 184 A.2d 780 (1962); *see also Stein v. New York*, 346 U.S. 156, 178, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953); *McDonald v. Pless*, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915).

It has long been held that there is no difference between a civil and criminal case so far as the principle of impeachment of a verdict is concerned. *Spahn v. People's Ry. Co.*, Del. Supr., 92 A. 727, 731 (1912)(quoting *State v. Harmon*, 4 Pennewill 580, 60 A. 866 (1902)).

9. Rule 606(b) "Competency of Juror as Witness" states:

*Inquiry into the validity of verdict or indictment.* Upon inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

10. *Sheeran*, 526 A.2d at 894 (citations omitted).

11. *Id.* at 895 (quoting *Patterson v. Colorado*, 205 U.S. 454, 462, 27 S.Ct. 556, 51 L.Ed. 879 (1907)).

12. *Id.* (quoting *Government of Virgin Islands v. Gereau*, 3d Cir., 523 F.2d 140, 150 (1975),

cussions among jurors, intimidation or harassment of one juror by another, and other intra-jury influences on the verdict.[13] A juror's competence to impeach a verdict is based on the rule that a court will accept testimony on any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon the deliberative process itself.[14] Jurors are not competent to testify about intrinsic influences on the verdict [15] or on jurors' mental processes.[16]

■ The Court has very broad discretion in deciding whether a case must be retried or a juror summoned and investigated due to alleged exposure to prejudicial information or improper outside influence.[17] With regard to the issue of whether a juror's inaccurate or dishonest answer in voir dire may have undermined the validity of the verdict or the deliberative process, the burden is upon the complaining party to

show that there is a reasonable probability of juror taint of an inherently prejudicial nature, [if so,] a presumption of prejudice should arise that [the party's] right to a fair trial has been infringed upon.[18]

Juror misconduct of an inherently prejudicial nature contemplates the existence of "egregious circumstances." [19] The weight of authority in other jurisdictions holds that absent evidence that a juror deliberately lied during voir dire, the fairness of pretrial voir dire will generally be upheld.[20] Therefore, unless there is a showing that a juror lied on voir dire, testimony about voir dire as it may have later affected the validity of the verdict falls within Rule 606(b).[21] With regard to a juror's expression of biases or prejudicial views within the deliberative process itself, such conduct falls squarely within the purview of Rule 606(b).[22]

cert. denied, 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976)).

13. Id.

14. Id.

15. Id.

16. Burke v. State, Del.Supr., 484 A.2d 490, 500–01 (1984).

17. Sheeran, 526 A.2d at 897; Styler, 417 A.2d at 953; McLain, 586 A.2d at 655.

18. Massey, 541 A.2d at 1257 (citing Hughes v. State, Del.Supr., 490 A.2d 1034, 1046–48 (1985)).

19. Id. (citations omitted).

20. McDonough Power Equipment v. Greenwood, 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984)(a juror's honest, though mistaken, response to question on voir dire is insufficient to warrant reversal); United States v. Brooks, D.C.Cir., 677 F.2d 907, 912 (1982)("generally the failure of a juror to disclose facts that might lead to his being challenged will be the basis for the grant of a new trial only if the nondisclosure is deliberate.").

21. See Maldonado v. Missouri Pacific Ry. Co., 5th Cir., 798 F.2d 764, 770 (1986)(defendant's "motion did not indicate that any juror be-

lieved he or she would be unable to treat Missouri Pacific fairly but concealed that fact during voir dire."); Brofford v. Marshall, 6th Cir., 751 F.2d 845, 853 (juror stated during voir dire that she had preconceptions concerning case but believed she could set them aside and decide fairly; while her affidavit stated her preconceptions did influence her decision, Rule 606(b) was held applicable to bar affidavit; her affidavit may be read as stating that she was unable to set aside her preconceptions about the case, not that she was lying when she stated during voir dire that she could), cert. denied, 474 U.S. 872, 106 S.Ct. 194, 88 L.Ed.2d 163 (1985); Beale v. Speak, App., 127 Idaho 521, 903 P.2d 110, 125 (1995)(Plaintiff's effort to distinguish between directly attacking verdict and indirectly attacking verdict by challenging juror conduct during voir dire is not a distinction recognized under Rule 606(b); State v. Tolman, Utah App., 775 P.2d 422, 426 (1889))(Rule 606(b) precluded consideration of evidence that verdict was influenced by juror's reliance a religious conviction or divine intervention).

22. Sheeran, 526 A.2d at 895; McLain, 586 A.2d at 651–52; see also Martinez v. Food City, Inc., 5th Cir., 658 F.2d 369, 373 (1981)(juror testimony regarding the possible subjective prejudices or improper motives of individual jurors has been held to be within Rule 606(b) rather within the exception for

Nothing in the affidavit of Ms. Haile suggests that the two allegedly biased jurors deliberately lied during voir dire or that they had any notion that they were not answering the voir dire questions accurately. Plaintiffs' contention of juror misconduct is no more than an inference on a hearsay allegation that the two jurors did not recognize and disclose during voir dire biases against people who bring law suits for money damages. There is nothing in Ms. Haile's affidavit to suggest an extraneous or extrinsic influence on the deliberative process.[23] To the contrary, the fact that the jury ultimately reached a unanimous verdict suggests, if anything, that the alleged biases of the two jurors were an intrinsic influence on deliberations and therefore protected under Rule 606(b) from further scrutiny.[24]

### Improper and Abusive Conduct by Defendants' Counsel

Plaintiffs assert that defense counsel engaged in improper conduct before and during trial that had the effect of denying them a fair trial. In particular, Plaintiffs contend that defense counsel:

i) Concealed Dr. Mansoory's desire to change his deposition testimony regarding whether he hung and took down his own films;

ii) Misrepresented Plaintiff's burden of proof on the matter of tumor doubling time;

iii) Misrepresented a key element of the testimony of a defense expert witness; and

iv) Prejudiced Plaintiff's case by confusing and inflaming the feelings of the jury when it referred to Plaintiff's counsel as a "sideshow."

The failure of defense counsel to correct Dr. Mansoory's deposition by the submission of subsequently discovered information that he used alternators to assist him in the reading of films, while arguably improper,[25] was addressed during trial. Plaintiffs' counsel raised the issue and the Court inquired what relief the Plaintiffs sought and whether they wanted a mistrial. Plaintiffs' counsel declined the suggestion of a mistrial and requested instead to take Dr. Mansoory's deposition during the next break at trial. The request was granted, the deposition was taken, and no further relief was sought.

Because testimony on the use of alternators was relevant only to the issues of malpractice and punitive damages, Defendants' failure seasonably to disclose the information was not, ultimately, prejudicial. Dr. Mansoory testified at trial that he used alternators in his practice, which permitted him to read more films by avoiding lost time in removing films from jackets and mounting them for examination. The jury found in Plaintiffs' favor on the issue of malpractice.

Plaintiffs' second argument, that defense counsel misrepresented Plaintiffs' burden of proof on the validity of tumor doubling time by suggesting in closing argument that Plaintiffs had to prove doubling time was invalid in order to prove

---

extraneous influences); *United States v. Duzac*, 5th Cir., 622 F.2d 911, 913 (1980)("Here, there is no evidence that any external influence was brought to bear on members of the jury. The prejudice complained of is alleged to be the product of personal experiences unrelated to this litigation."); *Simmons First Nat. Bank v. Ford Motor Co.*, D.Ark., 88 F.R.D. 344, 345 (1980)("the jurors own prejudices or experiences do not constitute external influences under Rule 606(b).").

**23.** *See Sheeran*, 526 A.2d at 895.

**24.** *Id.*

**25.** Rule 26(e)(2) states:

> A party is under a duty seasonably to amend a prior response if the party obtains information on the basis of which (A) the party knows that the response was incorrect when made, or (B) the party knows that the response although correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

Super.Ct.Civ.R. 26(e)(2).

their case, is without merit. The Court clarified any misunderstanding the jury might have had on that point by giving a curative instruction.[26] Because Plaintiffs' counsel accepted, without objection, the curative instruction and did not pursue the issue further, Plaintiffs have waived their right to reassert the issue in a motion for new trial.[27]

 Plaintiff's third and fourth complaints against defense counsel's conduct face the same difficulty of timely objection.[28] With regard to Plaintiffs' third complaint, that defense counsel misrepresented the testimony of Dr. Ettinger about whether he applied the tumor doubling time method in testimony given in another case, any such misstatement was corrected by the instruction given:

> What the attorneys say is not evidence. Instead, whatever they say is intended to help you review the evidence presented. If you remember the evidence differently from the attorneys, you should rely on your own recollection.[29]

Plaintiffs' fourth complaint, that defense counsel prejudicially referred to plaintiffs' counsel as a "sideshow," was not objected to at the time. In its briefing on this point Plaintiffs' counsel does not elaborate on how the reference to sideshow confused and inflamed the feelings of the jury. The Court may only surmise that the reference to a sideshow is viewed as a pejorative comment on counsel's presentation and person. While such insinuations may reflect poor courtroom manners, without any demonstration that the comment specifically prejudiced its case, the Court is unable to address the issue further.

For the reasons discussed above, Plaintiffs' motion for new trial is DENIED.

IT IS SO ORDERED.

---

**26.** The curative instruction stated:
The Court: Ladies and Gentlemen, the plaintiffs have no obligation to disprove the defendants' argument relating to tumor doubling time. To the extent that Mrs. Naczi's comments may have suggested such a duty, that's incorrect.
*See Scott v. State*, Del.Supr., No. 127, 1991, 1992 WL 404277, Holland, J. (Dec. 18, 1992)(Order at *4)(prompt giving of curative instruction as requested by counsel usually negates any possible prejudice aroused in jury's mind).

**27.** *Medical Center of Delaware v. Lougheed*, Del.Supr., 661 A.2d 1055, 1060 (1995)(party must timely object to improper statements made in closing argument or waive the right to raise the issue subsequently); *Eustice v. Rupert*, Del.Supr., 460 A.2d 507, 510 (1983).

**28.** *Id.*

**29.** Jury instructions at 27, "Statements of Counsel," based on DEL. PATTERN JURY INSTRUCTION, CIVIL § 3.3 (1997).