The STATE of Ohio, Appellee,

v.

WILLIAMS, Appellant.

[Cite as *State v. Williams,* 149 Ohio App.3d 434, 2002-Ohio-4831.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–01–1253.

Decided Sept. 13, 2002.

436

Julia R. Bates, Lucas County Prosecuting Attorney, Brenda J. Majdalani and Timothy F. Braun, Assistant Prosecuting Attorneys, for appellee.

David Bodiker, State Public Defender, Angie Greene and William J. Mooney, Assistant Public Defenders, for appellant.

---

JAMES R. SHERCK, Judge.

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas which denied postconviction relief in a death-penalty case. Because we conclude that the trial court should have granted appellant a hearing on whether improper contact by an alternate juror and court employees with the jury during sentencing deliberations resulted in prejudice to appellant, we reverse that portion of the court's order.

{¶ 2} Appellant, Robert Williams, was convicted of the aggravated robbery, rape, and murder of 88–year–old Velma May McDowell while burglarizing McDowell's Toledo apartment. The jury found three capital specifications on the murder count.

{¶ 3} During the mitigation hearing that followed his conviction, appellant presented the testimony of clinical psychologist Dr. Christopher Layne. Layne testified based on his personal testing of appellant and his review of numerous prior psychological evaluations. According to Dr. Layne, appellant exhibited numerous signs of antisocial behavior early in his life. This behavior resulted in repeated psychological evaluations at the request of schools or at the direction of the courts. Accompanying these evaluations were recommendations for treatment, which Dr. Layne opined might have been successful.

{¶ 4} However, for whatever reason, none of these recommendations was implemented. The result, according to Dr. Layne, was that a window of opportunity to intervene in appellant's development was missed. By appellant's middle teens, his pattern of antisocial criminal behavior was set.

{¶ 5} On closing, appellant's counsel argued that appellant's behavior was in no small measure the result of his environment and the failure of the system to timely intervene in his development. According to appellant's counsel, the failure of the system, therefore, should be viewed as a mitigating factor, favoring imposition of a sentence of life without parole instead of the death penalty.

{¶ 6} After the first day of sentencing deliberations, the jury and four alternate jurors were sequestered at a hotel. The next morning one of the alternate jurors approached the bailiff in charge of the group and asked permission for the jurors to pray prior to deliberations.

{¶ 7}  According to the bailiff, she neither encouraged nor discouraged such a prayer.  However, juror affidavits suggest that the bailiff, other court personnel, and the jurors joined hands during a prayer for guidance led by the alternate juror.  The jury then returned to the courthouse, continued deliberations, and eventually recommended that the death penalty be imposed.  The trial court followed the jury's recommendation, imposing the death penalty.

{¶ 8}  Appellant appealed his conviction to the Supreme Court of Ohio and concurrently petitioned the trial court for postconviction relief.  The trial court, without hearing, dismissed appellant's postconviction petition, and this appeal followed.

{¶ 9}  Appellant sets forth the following seven assignments of error:

{¶ 10}  "First Assignment of Error

{¶ 11}  "The trial court erred in dismissing appellant's postconviction petition without a hearing because appellant presented sufficient operative facts demonstrating counsel's ineffectiveness and resulting prejudice.

{¶ 12}  "Second Assignment of Error

{¶ 13}  "The trial court erred in dismissing appellant's petition without a hearing because appellant demonstrated that his death sentence is void or voidable due to the state's participation in jury prayer.

{¶ 14}  "Third Assignment of Error

{¶ 15}  "The trial court erred in dismissing appellant's petition because execution by lethal injection is unconstitutional under the Federal and Ohio Constitutions.

{¶ 16}  "Fourth Assignment of Error

{¶ 17}  "The trial court erred in dismissing appellant's petition because the cumulative effect of the errors in this case rendered the trial fundamentally unfair.

{¶ 18}  "Fifth Assignment of Error

{¶ 19}  "The trial court erred in applying the doctrine of res judicata as a basis for dismissing appellant's claim that was supported by sufficient evidence dehors the record.

{¶ 20}  "Sixth Assignment of Error

{¶ 21}  "The trial court erred in dismissing appellant's petition without a hearing because appellant demonstrated that his death sentence is void or voidable due to the court's failure to discharge the four alternate jurors pursuant to Crim.R. 24(F) and Civ.R. 47(C).

{¶ 22} "Seventh Assignment of Error

{¶ 23} "The trial court erred in dismissing appellant's petition without a hearing because appellant demonstrated that his death sentence is void or voidable due to a juror's independent legal research after he had been sworn as a juror."

I

{¶ 24} Under his first assignment of error, appellant enumerates six "claim[s] for relief," which he asserts describe ineffective assistance of trial counsel during the mitigation phase of the trial.

{¶ 25} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. * * * Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. Accord *State v. Smith* (1985), 17 Ohio St.3d 98, 100, 17 OBR 219, 477 N.E.2d 1128.

{¶ 26} Scrutiny of counsel's performance must be deferential. *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. In Ohio, a properly licensed attorney is presumed competent, and the burden of proving ineffectiveness is the defendant's. *State v. Smith,* supra. Counsel's actions that "might be considered sound trial strategy" are presumed effective. *Strickland v. Washington* at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. "Prejudice" exists only when the lawyer's performance renders the result of the trial unreliable or the proceeding unfair. Id. Appellant must show that there exists a reasonable probability that a different verdict would have been returned but for counsel's deficiencies. Id. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. See, also, *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293, for Ohio's adoption of the *Strickland* test.

{¶ 27} Appellant submits the report of clinical psychologist Allen J. Brown, Ph.D., who criticized trial counsel for failure to obtain more of appellant's prison records and interview more of appellant's relatives. Dr. Brown contested mitigation witness Dr. Layne's conclusion that appellant is not neurologically impaired, challenged Dr. Layne's credentials to make such a conclusion, and suggested that Dr. Layne, "[l]ike the original examiners, * * * misinterpreted the data and findings of several [prior] evaluations." Additionally, Dr. Brown

noted that because Dr. Layne admittedly had no experience with sex offenses, the jury was deprived of any psychological explanation of deviant sexual behavior, such as the rape of an 88–year–old woman.

{¶ 28}   A dispute between experts alone does not show ineffective assistance of trial counsel for failing to present an alternative view.   *State v. Bryant–Bey* (June 16, 2000), Lucas App. No. L–97–1425, 2000 WL 770131.

{¶ 29}   What appellant seeks to do is use Dr. Brown's report to build an alternative theory of mitigation that explains appellant's deviant sexual behavior. Appellant then seeks to fault trial counsel for failure to embrace this theory and insists that trial counsel's performance was deficient for failing to present evidence in support of this theory and in not choosing an expert versed in sexual deviance.   The record of the mitigation hearing, however, reveals that trial counsel chose a different tactic.

{¶ 30}   Trial counsel sought to demonstrate that society had numerous opportunities to intervene against the direction appellant's life was taking.   Dr. Layne testified that he believed that had the recommendations of professionals been acted upon early in appellant's adolescence, appellant would not have become, in a phrase to which appellant now vigorously objects, a "hardened gutless criminal."

{¶ 31}   It is not the role of a court considering a petition for postconviction relief, or for this court, to weigh the merits of alternative defense theories.   Our task is to determine whether the theory actually employed "might be considered sound trial strategy."   *Smith,* supra.   On the facts of this case, we cannot say that the mitigation theory that trial counsel used, "that appellant fell between the cracks," was not sound strategy.   See *State v. Bey* (1999), 85 Ohio St.3d 487, 709 N.E.2d 484, citing *State v. Mason* (1998), 82 Ohio St.3d 144, 157, 694 N.E.2d 932, certiorari denied (1998), 525 U.S. 1057, 119 S.Ct. 624, 142 L.Ed.2d 562 (a court will not second-guess trial strategy decisions).

{¶ 32}   Since no hearing on a petition for postconviction relief is necessary absent a petitioner's threshold submission of evidentiary documents containing sufficient facts that demonstrate a lack of effective assistance of counsel, *State v. Jackson* (1980), 64 Ohio St.2d 107, 18 O.O.3d 348, 413 N.E.2d 819, syllabus, the trial court did not err in denying a hearing on appellant's Sixth Amendment claim.   Accordingly, appellant's first assignment of error is not well taken.

## II

{¶ 33}   We will reserve our discussion of appellant's second and sixth assignments of error.

{¶ 34} In his third assignment of error, appellant contends that execution by lethal injection is cruel and unusual punishment and violates appellant's right to due process of law.

{¶ 35} Execution by lethal injection has been found constitutional. *State v. Carter* (2000), 89 Ohio St.3d 593, 608, 734 N.E.2d 345. Accordingly, appellant's third assignment of error is not well taken.

### III

{¶ 36} In his fourth assignment of error, appellant contends that the trial court erred in dismissing his petition because the cumulative errors in the trial resulted in a proceeding that was fundamentally unfair. Under the doctrine of cumulative error, a judgment may be reversed when the cumulative effect of errors deprives a defendant of his or her constitutional rights, even though such errors are not prejudicial singly. *State v. DeMarco* (1987), 31 Ohio St.3d 191, 196–197, 31 OBR 390, 509 N.E.2d 1256. The doctrine is inapplicable, as we do not find multiple instances of harmless error. *State v. Garner* (1995), 74 Ohio St.3d 49, 64, 656 N.E.2d 623. Accordingly, appellant's fourth assignment of error is not well taken.

### IV

{¶ 37} In his fifth assignment of error, appellant complains that the trial court should not have applied the doctrine of res judicata to his denial-of-counsel claim, because of later-submitted evidence of an attorney-client relationship with the lawyer appellant claims he was prevented from seeing immediately after his arrest.

{¶ 38} The doctrine of res judicata is applicable to postconviction-relief proceedings. *State v. Perry* (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104, paragraph eight of the syllabus.

{¶ 39} "Under the doctrine of *res judicata,* a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was *raised or could have been raised by the defendant at the trial,* which resulted in that judgment of conviction, *or on an appeal* from that judgment." (Emphasis sic.) Id. at paragraph nine of the syllabus.

{¶ 40} However, the presentation of competent, reliable, and material evidence outside the record may defeat the application of res judicata, but such

evidence de hors the record must demonstrate that the petitioner could not have appealed the claim based on information in the trial record.

{¶ 41} The issue that appellant suggests could not have been raised on appeal is whether police prevented attorney Alan Penamon from consulting with appellant during the hours immediately following his arrest. The evidence de hors the record on this matter is an affidavit by attorney Penamon.

{¶ 42} In his affidavit, attorney Penamon avers that he was counsel for appellant when appellant was arrested. Evidence of an attorney-client relationship at the time of appellant's arrest, according to appellant, is information that was not before the trial court. However, attorney Penamon also states that he related all of the information he had about appellant's arrest to appellant's later-appointed trial counsel.

{¶ 43} Attorney Penamon's affidavit adds no new information. The question whether attorney Penamon was prevented from seeing appellant during postarrest questioning not only could have been litigated at trial, it was litigated in a hearing on a motion to suppress. Indeed, as attorney Penamon points out, he was present at the suppression hearing and prepared to testify. However, the record reveals, trial counsel decided not to call attorney Penamon for tactical reasons. In any event, the issue of which appellant complains was or could have been raised at trial or on direct appeal and is, therefore, properly the subject of the application of the doctrine of res judicata.

{¶ 44} Accordingly, appellant's fifth assignment of error is not well taken.

## V

{¶ 45} In his sixth assignment of error, appellant insists that the trial court erred in not dismissing the alternate jurors when the regular panel began its deliberations. Crim.R. 24(F) provides, "An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict."

{¶ 46} The Supreme Court of Ohio has held, however, that Crim.R. 24(F) is not violated in a capital case in which an alternate juror is substituted after the guilt phase, but before penalty-phase deliberations begin. *State v. Hutton* (1990), 53 Ohio St.3d 36, 559 N.E.2d 432, paragraph three of the syllabus; *State v. Murphy* (2001), 91 Ohio St.3d 516, 531, 747 N.E.2d 765. Nevertheless, in this case, alternates were still not discharged after penalty-phase deliberations began. This violates the rule and the holding in *Hutton*. The error, however, is harmless unless appellant can demonstrate that he was prejudiced by the trial court's failure to timely discharge the alternate jurors. Prejudice will not be presumed. *State v. Jackson* (2001), 92 Ohio St.3d 436, 439, 751 N.E.2d 946.

{¶ 47}  Because the issue of prejudice is interrelated with appellant's second assignment of error, we will reserve our decision on this assignment.

## VI

{¶ 48}  Appellant's remaining assignments of error concern extraneous events that may have influenced the jury.

{¶ 49}  As a threshold matter, from the time of Lord Mansfield it has been the rule that the verdict of a jury may not be impeached by a member of the jury absent foundational evidence aliunde, "i.e. by evidence from some other source." *State v. Adams* (1943), 141 Ohio St. 423, 427, 25 O.O. 570, 48 N.E.2d 861, citing *Vaise v. Delaval* (K.B.1785), 1 T.R. 11, 99 Eng.Rep. 944; see, also, *State v. Reiner* (2000), 89 Ohio St.3d 342, 349, 731 N.E.2d 662.

{¶ 50}  The aliunde rule, along with certain modern exceptions is codified in Evid.R. 606(B):

{¶ 51}  "Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented.  However a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court.  His affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying will not be received for these purposes."

{¶ 52}  With respect to appellant's seventh assignment of error, appellant's assertion that a juror independently researched the elements of the crimes of which appellant was accused is supported only by the affidavit of the juror himself.  There is no outside evidence that this occurred.  Pursuant to Evid.R. 606(B), the juror's averments were, therefore, incompetent and may not form the basis of an inquiry.  Accordingly, appellant's seventh assignment of error is not well taken.

{¶ 53}  In his remaining assignment of error, appellant complains that the trial court erred in dismissing without a hearing his claim that he was prejudiced by a penalty-phase prayer initiated by an alternate juror.  The juror was allegedly joined by other jurors and court personnel.

{¶ 54}   In this matter, the aliunde rule is satisfied by the affidavit of the court's criminal bailiff who was responsible for the jurors and alternates during sequestration.   According to the bailiff, "[O]n the morning of the second day of deliberations in the mitigation phase, I went with the jurors to the courthouse. * * * I was approached by alternate juror [T.S.] who asked me if [sic] would be alright for the jurors to pray prior to deliberating.   This conversation took place in the hallway of the hotel, outside the elevators.   In responding to Mr. [S.], I did not encourage such a prayer nor did I tell him that the jury could not pray.   I basically indicated that it was up the [sic] members of the jury whether or not they wished to pray.   [A]fter my conversation with Mr. [S.], the jurors decided to pray in the hallway, outside the elevators prior to coming to court that morning. [D]uring the prayer, I bent my head out of respect for their decision, but I did not otherwise participate."

{¶ 55}   Pursuant to Evid.R. 606(B), the bailiff's affidavit opens an inquiry into whether the jurors were exposed to extraneous prejudicial information or improper outside influence.   As a result, it is proper to consider the affidavits of jurors concerning this episode.

{¶ 56}   According to juror J.O.:

{¶ 57}   "[A]s we gathered in front of the elevators at the hotel to return to the courthouse, one of the alternates asked the judge's bailiff if it was permissible for the jurors to pray together.   This alternate then spoke a prayer asking for God's help in reaching the right decision in this case.   The court personnel, bailiff, and jurors held hands during the prayer.   This prayer occurred prior to our final decision in the case."

{¶ 58}   A state public defender interviewed alternate juror T.S. about the prayer and reported in an affidavit, "It was Mr. [S.'s] recollection that the bailiff, the court officers, the alternate jurors, and the jurors held hands, bowed their heads and joined him in a prayer.   Although Mr. [S.] could not remember the prayer verbatim, he remembered it to be something like 'God give us the guidance in making the correct decision and the strength to be at peace with the decision.' "

{¶ 59}   Appellant contends that the discrepancies between the accounts of the juror prayer give rise to a question of fact that would preclude summary judgment on this issue.   However, questions of fact preclude summary judgment only if they are "material."   Civ.R. 56(C).   A fact is "material" if it would affect the outcome of the matter under substantive law.   *Russell v. Interim Personnel, Inc.* (1999), 135 Ohio App.3d 301, 304, 733 N.E.2d 1186; *Needham v. Provident Bank* (1996), 110 Ohio App.3d 817, 826, 675 N.E.2d 514.

{¶ 60} Appellant argues at length that if indeed court personnel participated in the juror's prayer, that act constituted state endorsement of religion, which is prohibited by the Establishment Clause of the First Amendment to the United States Constitution. Appellant implies that an Establishment Clause violation should be treated the same as a Fifth or Sixth Amendment violation, vitiating his sentence. Appellant offers no authority to support this interpretation. Nor are we aware of any statute, case, or commentary that advances any substantial criminal rights derived from the Establishment Clause.

{¶ 61} Alternatively, appellant argues that at the least, the group prayer was the result of an impropriety by court personnel and inserted extraneous considerations into the jury's deliberations. The result, according to appellant, was that the state's participation in the prayer for guidance may have diminished the jury's collective and individual responsibility for its verdict or may have led the jury to believe that the responsibility for determining the appropriateness of the defendant's death sentence rested elsewhere. See *Caldwell v. Mississippi* (1985), 472 U.S. 320, 329, 105 S.Ct. 2633, 86 L.Ed.2d 231; *Sandoval v. Calderon* (C.A.9, 2001), 241 F.3d 765, 777. At the very least, appellant maintains, the trial court should have held a hearing to determine the effect of this incident.

{¶ 62} In response, the state suggests that this matter is one of first impression in Ohio and directs our attention to authority from other jurisdictions which, it asserts, holds that religious activity by jurors, if not proper, is not improper. *McNair v. Alabama* (Ala.Crim.App.1997), 706 So.2d 828, (reading from Bible and prayer in jury room); *Louisiana v. Langley* (La.1998), 711 So.2d 651 (each day jurors opened deliberations with a prayer); *Utah v. De Mille* (Utah 1988), 756 P.2d 81, 83 (juror had a "divine revelation" of defendant's guilt).

{¶ 63} The cases the state cites are inapposite to the present matter. Both *Langley* and *De Mille* were direct appeals from denials of motions for a new trial and both apply the aliunde rule to avoid the substantive issue. *McNair* was a postconviction-relief petition, but was decided on the merits only after a hearing.

{¶ 64} Construing the evidence in appellant's favor, Civ.R. 56(C), we must accept as true the juror's assertions that court personnel joined in a group prayer with certain jurors. Since the content and effect of this prayer are disputed, we conclude that it is in the interest of justice that appellant be afforded a hearing on this matter.

{¶ 65} Accordingly, appellant's second assignment of error and, to the extent that an alternate juror may have prejudicially interfered with deliberations, his sixth assignment of error are well taken.

{¶ 66} Upon consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed in part and reversed in part. This matter is

remanded to that court for proceedings consistent with this decision.  Costs to appellee.

Judgment affirmed in part,
reversed in part
and cause remanded.

Mark L. Pietrykowski, P.J., and Melvin L. Resnick, J., concur.