OPINION
{¶ 1} On September 24, 1999, the Stark County Grand Jury indicted appellant, Michael Dean Scott, Jr., on one count of murder with a firearm specification in violation of R.C. 2903.02. Said charge arose from the shooting death of Dallas Green. Appellant was also indicted on two counts of aggravated murder in violation of R.C. 2903.01, one count of aggravated robbery in violation of R.C. 2911.01, one count of kidnapping in violation of R.C. 2905.01 and two counts of possession of a firearm while under a disability in violation of R.C. 2923.13. Said charges arose from the shooting death of Ryan Stoffer and the subsequent theft of his motor vehicle. The aggravated murder counts carried death penalty specifications.
 {¶ 2} A jury trial commenced on March 21, 2000. The trial court found appellant guilty of the disability counts and the jury found him guilty of the remaining charges. A mitigation trial commenced on April 4, 2000. The jury recommended the sentence of death. The trial court accepted the recommendation.[1]
 {¶ 3} On January 26, 2001, appellant filed a petition for postconviction relief. Appellant filed an amended petition on February 5, 2001. On November 16, 2004, the state filed a response and a motion to dismiss and/or for summary judgment. By judgment entry filed December 21, 2004, the trial court adopted the state's response and denied the petition.
 {¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 5} "THE TRIAL COURT ERRED BY ADOPTING VERBATIM THE PROSECUTION'S RESPONSE TO THE POST-CONVICTION PETITION AND FAILING TO MAKE ITS OWN FINDINGS OF FACT AND CONCLUSIONS OF LAW."
 II {¶ 6} "THE TRIAL COURT ERRED IN DENYING SCOTT'S MOTION TO STRIKE THE PROSECUTOR'S RESPONSE WHEN THAT RESPONSE WAS FILED OVER TWO YEARS PAST THE STATUTORY AND COURT-SET DEADLINES."
 III {¶ 7} "THE TRIAL COURT ERRED IN GRANTING THE STATE SUMMARY JUDGMENT WHEN THERE WERE GENUINELY DISPUTED ISSUES OF MATERIAL FACT AND SUMMARY JUDGMENT WAS INAPPROPRIATE AS A MATTER OF LAW."
 IV {¶ 8} "THE TRIAL COURT ERRED WHEN IT DENIED SCOTT'S POST-CONVICTION PETITION WITHOUT FIRST AFFORDING HIM THE OPPORTUNITY TO CONDUCT DISCOVERY."
 V {¶ 9} "THE TRIAL COURT ERRED BY APPLYING THE DOCTRINE OF RES JUDICATA TO BAR SCOTT'S GROUNDS FOR RELIEF ONE, FIVE, AND SIX."
 VI {¶ 10} "THE TRIAL COURT ERRED IN DISMISSING SCOTT'S POST-CONVICTION PETITION WHEN HE PRESENTED SUFFICIENT OPERATIVE FACTS TO MERIT RELIEF OR, AT MINIMUM, AN EVIDENTIARY HEARING."
 I {¶ 11} Appellant claims the trial court erred in adopting the state's response to his postconviction relief petition instead of making its own independent findings of fact and conclusions of law. We disagree.
 {¶ 12} In its December 21, 2004 judgment entry, the trial court acknowledged its duty to conduct an independent analysis:
 {¶ 13} "Pursuant to R.C. § 2953.21(C), the Court has conducted a complete and meaningful review of the entire record in this case, including, but not limited to, the Defendant's Petition and Appendix, filed January 26, 2001, Defendant's Amendment to Petition, filed February 5, 2001, the entire record in Stark County Court of Common Pleas Case No. 1999-CR-1154, including transcripts, [consisting of eight boxes], the Supreme Court of Ohio Case No. 00-1001 [reported as State v. Scott,101 Ohio St.3d 31, 2004-Ohio-10], the State of Ohio's Response and Motion to Dismiss and for Summary Judgment, filed November 16, 2004, and Defendant's Reply, filed November 29, 2004."
 {¶ 14} The trial court then adopted "the Memorandum, Statement of Facts, Post-Conviction Relief Principles, Responses to Defendant-Petitioner's Post-Conviction Relief Claims and Conclusion contained in the State of Ohio's Response to Petition for Post-Conviction Relief and Motion to Dismiss and for Summary Judgment, filed November 16, 2004," citing several cases in support. See, State v. Powell (1993), 90 Ohio App.3d 260;State v. Sowell (1991), 73 Ohio App.3d 672. In State v.Poindexter (March 6, 1991), Hamilton App. No. C-890734, our brethren from the First District held the following:
 {¶ 15} "Finally, we note that the trial court's adoption of the findings of fact and conclusions of law tendered by the state, by itself, does not amount to error. We are aware of no authority supporting Poindexter's assertion that he was denied meaningful review of his conviction by the trial court's adoption of the state's findings and conclusions, nor do we believe that such was the case in this instance."
 {¶ 16} We agree with the First District and conclude the complained of procedure does not violate appellant's right to due process and meaningful review. Appellant has not demonstrated any prejudice as a result of the trial court's adoption of the state's response.
 {¶ 17} Upon review, we find the trial court did not err in adopting the state's response.
 {¶ 18} Assignment of Error I is denied.
 II {¶ 19} Appellant claims the trial court erred in permitting the state to file its response out of rule. We disagree.
 {¶ 20} It is conceded the state failed to file its response within the time of the last extension granted by the trial court (June 10, 2002). However, appellant did not request the trial court to proceed to determination after the cited date, nor did appellant file a writ of mandamus.
 {¶ 21} Upon review, we fail to find any undue prejudice to appellant, as his direct appeal was pending in the Supreme Court of Ohio during this time and such was not decided until January 14, 2004.
 {¶ 22} Assignment of Error II is denied.
 III, IV, VI {¶ 23} These assignments challenge the trial court's denial of his postconviction relief petition without an opportunity for discovery and/or evidentiary hearing. Given our decision in Assignment of Error V, infra, the only remaining ground for relief is the fourth claim set forth in appellant's February 5, 2001 amendment to his petition for postconviction relief.
 {¶ 24} R.C. 2953.21 governs petitions for postconviction relief. Subsection (C) states the following:
 {¶ 25} "The court shall consider a petition that is timely filed under division (A)(2) of this section even if a direct appeal of the judgment is pending. Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. The court reporter's transcript, if ordered and certified by the court, shall be taxed as court costs. If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal."
 {¶ 26} In State v. Jackson (1980), 64 Ohio St.2d 107, syllabus, the Supreme Court of Ohio held the following:
 {¶ 27} "In a petition for post-conviction relief, which asserts ineffective assistance of counsel, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness."
 {¶ 28} Justice Locher further stated the following at 111:
 {¶ 29} "Broad assertions without a further demonstration of prejudice do not warrant a hearing for all post-conviction petitions. General conclusory allegations to the effect that a defendant has been denied effective assistance of counsel are inadequate as a matter of law to impose an evidentiary hearing. See Rivera v. United States (C.A.9, 1963), 318 F.2d 606."
 {¶ 30} In State v. Calhoun, 86 Ohio St.3d 279,1999-Ohio-102, paragraphs one and two of the syllabus, the Supreme Court of Ohio stated the following regarding the review of accompanying affidavits:
 {¶ 31} "1. In reviewing a petition for postconviction relief filed pursuant to R.C. 2953.21, a trial court should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge the credibility of the affidavits in determining whether to accept the affidavits as true statements of fact.
 {¶ 32} "2. Pursuant to R.C. 2953.21(C), a trial court properly denies a defendant's petition for postconviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief."
 {¶ 33} Further, the Calhoun court held in "assessing the credibility of affidavit testimony," trial courts "should consider all relevant factors" including the following:
 {¶ 34} "(1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony." Calhoun at 285, citing Statev. Moore (1994), 99 Ohio App.3d 748, 754-756.
 {¶ 35} Our review will be a de novo review of the affidavits and evidence presented. Because appellant's claims are based upon ineffective assistance of counsel, we will use the following standard set out in State v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, certiorari denied (1990), 497 U.S. 1011. Appellant must establish the following:
 {¶ 36} "2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; Strickland v. Washington [1984],466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
 {¶ 37} "3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."
 {¶ 38} In appellant's fourth claim for relief, appellant argued his trial counselors were deficient in failing to present evidence during the mitigation phase that his foster/adoptive parents, Fred and Betty Scott, were abusive. Appellant argued the lack of evidence regarding the environment in the Scott home undermined the adversarial process and rendered the outcome unreliable. He further argued his trial counselors were deficient in not investigating the issue further and presenting it to the jury.
 {¶ 39} In support of this argument, appellant listed specific incidents labeled a____k in his amended petition and offered dehors the record. This proffered evidence includes the affidavit of Patrice Turner, a neighbor of appellant and his biological mother and later a resident of the Scott home, and the affidavits of former foster children in the Scott home, Lisa Hall and Eric Calloway.
 {¶ 40} Appellant lived with his biological mother, Julia Williams, aka Murray until the age of five. Thereafter, Children's Services placed appellant with Katherine Wilson. Appellant stayed in the Wilson home until the age of ten when he was placed in the Scott home.
 {¶ 41} Ms. Turner testified during the mitigation phase. She testified to the abuse appellant suffered at the hands of his biological mother, as set forth in the affidavit. Vol II T. at 218-230. Also in her affidavit, Ms. Turner stated she had been placed in the Scott home, but the "home was so bad that I ran away." See, Turner Affidavit at ¶ 12. Ms. Turner was not in the Scott home at the same time as appellant. Appellant was not placed in the Scott home until well after Ms. Turner had become an adult and had gotten married. Id. at ¶ 14-15.
 {¶ 42} Ms. Hall also testified during the mitigation phase. She testified to essentially the same things listed in her affidavit, the positive parenting appellant received in the Wilson home and the amount of time Mrs. Wilson gave to appellant. Vol. I T. at 183. This aspect of appellant's life was developed during the mitigation phase and was specifically addressed by the Supreme Court of Ohio in the Scott decision at ¶ 74 and 75:
 {¶ 43} "The following year, although Wilson loved Scott and had bonded with him, Human Services removed him from Wilson's home because of `his acting out behavior and because of Mrs. Wilson's declining health and inability to handle [Scott].' At that time, Human Services placed him with the Scott family, and they later adopted him.
 {¶ 44} "Lisa Ann Hall, a foster child at the Wilson home when Scott lived there, testified that Wilson and Scott had had a very close relationship, `just like a regular mother and son.' She explained that, because of the abuse that Scott had suffered, Wilson `just kind of took him under her wing more so than the other kids. He was shown a lot of attention.'"
 {¶ 45} The affidavit of Mr. Calloway painted the conditions of the Scott home in a negative light. These statements were appositive to the Children's Services file and the testimony elicited during the mitigation phase. Vol. II T. at 368-371. There are no dates in the affidavit to verify that the two time frames wherein Mr. Calloway lived in the Scott home (five years in total) were parallel to appellant's time there.
 {¶ 46} During the mitigation phase, appellant presented the testimony of both Mr. and Mrs. Scott. They testified to their involvement and adoption of appellant. Both testified everything was well until about the time appellant turned seventeen. Vol. III. T. at 488, 490, 501-502. Appellant listened to the Scotts, but "he still wanted to do his own little thing." Id. at 488. Appellant left the Scott home at eighteen and subsequently dropped out of high school. Id. at 488-489. Appellant also presented the testimony of his two siblings who also lived in the Scott home. Both siblings testified to a normal family life and that they loved appellant. Id. at 494, 508, 510.
 {¶ 47} If Mr. Calloway lived in the Scott home at the same time as appellant, appellant's trial counselors would have been faced with presenting two diametrically opposed views. Clearly such a choice would have been deficient representation. If appellant had testimony contra to the portrait painted of the Scott home, he could have made an unsworn statement, but he declined to do so. Vol. III T. at 587-588.
 {¶ 48} Upon review, we find the trial court did not err in denying appellant's motion for postconviction relief without holding a hearing.
 {¶ 49} Assignments of Error III, IV, and VI are denied.
 V {¶ 50} Appellant claims the trial court erred in finding the doctrine of res judicata barred the consideration of claims one, five and six in his petition for postconviction relief. We disagree.
 {¶ 51} Claim one challenged the jury venire. Appellant argued his trial counselors were ineffective in not challenging the venire because it was tainted by pretrial publicity. Claim two and three also incorporated the failure to move for change of venue and/or the issue of pretrial publicity.
 {¶ 52} Claim five argued his trial counselors were ineffective in not developing the full extent of his mother's abhorrent pathology as it impacted on his life. Appellant claimed this issue was not properly developed during the mitigation phase of the trial.
 {¶ 53} Claim six argued the death penalty by lethal injection as administered by the state of Ohio was unconstitutional because it is "more likely than not a torturous, painful, barbaric and, hence, unconstitutional means of extinguishing life — not an antiseptic method for state sanctioned killing."
 {¶ 54} Appellant argues the doctrine of res judicata does not apply to these claims because the claims can be supported dehors the record and therefore were not available on direct appeal.
 {¶ 55} As stated by the Supreme Court of Ohio in State v.Perry (1967), 10 Ohio St.2d 175, paragraphs eight and nine of the syllabus, the doctrine of res judicata is applicable to petitions for postconviction relief. The Perry court explained the doctrine at 180-181 as follows:
 {¶ 56} "Under the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment."
 PRETRIAL PUBLICITY {¶ 57} We find the issue of pretrial publicity was a viable and litigable issue for direct appeal. The voir dire of the jury venire consists of five volumes. The voir dire included individual questions on the issue of pretrial publicity. Vol. I T. at 15. The jurors completed questionnaires and one specifically developed for pretrial publicity. See, Sealed Juror Questionnaires, March 29, 2000. The trial court ruled on a motion regarding pretrial publicity filed by appellant's trial counselors. See, Judgment Entry filed March 6, 2000.
 TESTIMONY DURING THE MITIGATION PHASE {¶ 58} We find the record is sufficient to have fully developed the issue of the failure to properly present appellant's mother's pathology at trial. The trial court granted the release of appellant's case file to his trial counselors. The trial court excluded some evidence of the mother's pathology and this exclusion was cognizable on appeal. This is set forth in the record during the mitigation phase. Vol. I T. at 14-16.
 DEATH PENALTY {¶ 59} The constitutional attack upon lethal injection as the means of causing death was available on direct appeal and as such did not require matters dehors the record that were not available at trial. Further, the constitutionality of the death penalty has been upheld in Ohio. State v. Adams, 103 Ohio St.3d 508,2004-Ohio-5845; State v. Fitzpatrick, Hamilton App. No. C-030804, 2004-Ohio-5615; State v. Leonard,157 Ohio App.3d 653, 2004-Ohio-3323; State v. Braden, Franklin App. No. 02AP-954, 2003-Ohio-2949; State v. Williams,149 Ohio App.3d 434, 2002-Ohio-4831.
 {¶ 60} We conclude these issues were all recognizable and arguable on direct appeal for the record as its stands and materials dehors the record were not necessary to pursue these issues.
 {¶ 61} Assignment of Error V is denied.
 {¶ 62} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
Farmer, J., Gwin, P.J. and Reader, V.J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed.
[1] Appellant's convictions and sentence were affirmed on appeal to the Supreme Court of Ohio. See, State v. Scott,101 Ohio St.3d 31, 2004-Ohio-10.