Brown, C.J.,
dissenting.
Introduction
{¶ 28} In this case, Michael Scott, who has been sentenced to death, does not ask to stay the executioner’s hand, but instead prays that the tools used to terminate his life will be humane. At the heart of his plea is a question that probes our common conscience: whether we will ensure that the delivery of death does not needlessly inflict severe pain upon those we have condemned. Cases such as this are the measuring stick of our civilization, in which we stake the boundaries of our government’s obligation to protect the weakest, the least popular, and the worst of its members.
{¶ 29} The federal court that is considering Scott’s case has asked us a question of Ohio law: whether there is a court in Ohio in which Scott may seek to enforce his rights regarding the amount of risk, pain, and suffering that he will endure during his execution.
{¶ 30} The majority today summarily answers “no.”
{¶ 31} I dissent.
{¶ 32} It is unthinkable that there could be no judicial forum in Ohio within which to explore the legal ambit of humane execution. Ohio has sentenced Scott to death, and Ohio has provided the means and guidelines under which he will *325 die. Ohio must also take the responsibility of ensuring that the method of death does not violate Scott’s remaining rights.
{¶ 33} The majority abdicates this court’s responsibility to federal courts to hear and settle this matter. In doing so, we have shirked our duties to enforce and interpret an Ohio statute, Ohio’s Constitution, and the United States Constitution. Worse, we have rendered unenforceable the General Assembly’s statutory mandate that death shall be administered “quickly and painlessly,” and we have foreclosed from consideration whether Ohio’s Constitution provides greater protection from pain and suffering than the federal Constitution.
Analysis
{¶ 34} Scott has the right to a quick and painless death.[1] R.C. 2949.22(A)[2] provides that the drug protocol “shall” be administered in such a manner as to “quickly and painlessly cause death.”
*326 {¶ 35} This statutory right provides greater protection against pain and suffering than the Eighth Amendment against cruel and unusual punishment. The United States Supreme Court has explained that “[s]imply because an execution method may result in pain, either by accident or as an inescapable consequence of death, does not establish the sort of ‘objectively intolerable risk of harm’ that qualifies as cruel and unusual” under the Eighth Amendment. Baze v. Rees (2008), 553 U.S. 35, 50, 128 S.Ct. 1520, 170 L.Ed.2d 420, quoting Farmer v. Brennan (1994), 511 U.S. 825, 846, 114 S.Ct. 1970, 128 L.Ed.2d 811. In order for a petitioner to succeed on an Eighth Amendment challenge, he must show that an “alternative procedure [is] feasible, readily implemented, and [will] in fact significantly reduce a substantial risk of severe pain.” Baze at 52. Thus, the burden on a petitioner to establish an Eighth Amendment violation is worlds apart from establishing a violation of the affirmative requirement in R.C. 2949.22(A) that the warden shall ensure that an execution be quick and painless.
{¶ 36} Accordingly, Ohio courts are obligated to enforce the policy announced in this statute and determine whether the lethal-injection protocol meets the criteria of R.C. 2949.22, independent of constitutional considerations. Through R.C. 2949.22, the General Assembly has provided that those condemned to death should experience a quick and painless death. Ohio courts are duty-bound to ensure that that policy is realized.
{¶ 37} Yet today’s holding closes the courthouse doors to death-row petitioners who wish to protect their right to a quick and painless death under R.C. 2949.22.
{¶ 38} Federal courts will not protect that right. The Sixth Circuit has recently ruled that federal courts cannot enforce R.C. 2949.22, because the statute does not “create[ ] a federal right protected by the Fourteenth Amendment.” Cooey v. Strickland (C.A.6, 2010), 604 F.3d 939, 945.
{¶ 39} If Ohio’s courthouses too are closed to claims under R.C. 2949.22 — as the majority says they are — the statute is rendered meaningless and unenforceable, and the right, though laudable, becomes hollow.
{¶ 40} Further, Ohio courts must resolve whether those persons facing execution are entitled to greater protections under the Ohio Constitution than they are provided by the federal Constitution. In Arnold v. Cleveland (1993), 67 Ohio St.3d 35, 616 N.E.2d 163, we held that Ohio’s Constitution has force independent of the United States Constitution. We explained that our state Constitution is not limited to the protections offered by its federal counterpart, and Ohio could “accord[ ] greater civil liberties and protections to individuals and groups.” Id. at paragraph one of the syllabus.
{¶ 41} We have never directly held that the standard for a method-of-execution challenge under the Eighth Amendment of the United States Constitution *327 announced in Baze v. Rees is the same as that required under Section 9, Article I of the Ohio Constitution, which prohibits “cruel and unusual punishments.”
{¶ 42} In a case that predates Baze v. Rees, we addressed a method-of-death challenge to lethal injection: “[Appellant] argues that the death penalty is unconstitutional under the federal and Ohio Constitutions because the methods used to carry out the sentence, electrocution or lethal injection, are cruel and unusual punishment. * * * [Appellant] fails to cite any case in which lethal injection has been found to be cruel or unusual punishment. This proposition of law is overruled.” State v. Carter (2000), 89 Ohio St.3d 593, 608, 734 N.E.2d 345.[3]
{¶ 43} Carter predated the holding in Baze v. Rees regarding the method by which a defendant may challenge the method of death for purposes of the Eighth Amendment. Accordingly, we have never determined whether the standard under our Constitution is the same as the standard announced in Baze. In State v. Trimble, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 279, we cited Carter in summarily overruling a challenge to the lethal-injection method. We also cited Baze, noting that Baze upheld Kentucky’s lethal-injection protocol, which is “similar” to Ohio’s. Id. However, we have never independently examined our protocol, nor have we expressly adopted the Baze analysis as the standard for Ohio’s protections against cruel and unusual punishment.
{¶ 44} Thus, nothing in our precedent forecloses a death-row convict from raising a new constitutional argument of independent force under the Ohio Constitution. Because this issue of purely state law is a novel one, federal courts should abstain from ruling on whether the lethal-injection protocol meets the protections afforded by Ohio’s Constitution. See Minnesota v. Natl. Tea Co. (1940), 309 U.S. 551, 557, 60 S.Ct. 676, 84 L.Ed. 920 (“It is fundamental that state courts be left free and unfettered by us in interpreting their state constitutions”); S.Ct.Prac.R. 18.1 (providing that a federal court may certify questions of state law “for which there is no controlling precedent in the decisions of this Supreme Court”).
{¶ 45} Thus, by refusing to offer an Ohio forum for method-of-execution challenges, the majority has abandoned the core mission of Ohio courts of determining the scope and protections afforded by Ohio’s Constitution. Worse, *328 the result is that a death-row petitioner has no forum in which to seek protection from cruel and unusual punishment under the Ohio Constitution.
{¶ 46} Ohio courts should consider a convict’s rights under the Eighth Amendment to the United States Constitution as well. In the context of death, a petitioner should be permitted to challenge methods of execution that carry an “ ‘objectively intolerable risk of harm’ ” or a “ ‘substantial risk of serious harm.’ ” Baze, 553 U.S. at 52, 128 S.Ct. 1520, 170 L.Ed.2d 420, quoting Famer, 511 U.S. at 842, 114 S.Ct. 1970, 128 L.Ed.2d 811. It is, by now, well settled that Ohio courts are arbiters of questions raised under the United States Constitution and enjoy the inherent power to apply its provisions. Thus, when the issue is presented to them, Ohio courts should not shy away from the duty to hear and determine a condemned person’s Eighth Amendment challenge to lethal injection.
{¶ 47} Given the range of laws governing the execution of human beings, it is unsurprising that there are, in fact, avenues in Ohio in which to raise such claims. Indeed, in this case, the federal court was faced with so many different options— venues that had already been used or recommended in Ohio, that it asked us to straighten them all out.
{¶ 48} As the federal court noted, challenges to the method of execution have been raised in different settings and at different stages and have met different fates. See, e.g., State v. Scott, 5th Dist. No. 2005CA00028, 2006-Ohio-257, 2006 WL 173171, ¶ 59-60 (issue first raised in court of appeals in postconviction-relief proceeding; rejected as waived); State v. Jackson, 11th Dist. No. 2004-T-0089, 2006 Ohio 2651, 2006 WL 1459757, ¶ 149 (issue raised and rejected in trial court in postconviction; appellate court held that “a postconviction proceeding is not the proper legal context in which to litigate this issue; instead, this type of issue should be raised in a declaratory judgment or habeas corpus action”); State v. Rivera, 9th Dist. Nos. 08CA009426 and 08CA009427, 2009-Ohio-1428, 2009 WL 806819 (pretrial motion for dismissal of death-penalty specifications on ground that method of execution is unconstitutional granted by trial court; appeal by state dismissed as not involving final, appealable order); Otte v. Strickland, Franklin C.P. No. 08-CV-013337 (16 death-row inmates seek declaratory judgment in common pleas court; case is currently stayed).
{¶ 49} In my opinion, there are at least two good methods by which a death-row petitioner may challenge the method of execution in Ohio courts.
{¶ 50} First is declaratory judgment under R.C. Chapter 2721. A declaratory-judgment action would allow petitioners to raise all potential constitutional and statutory issues in one action. And it would provide a framework for the issuance of injunctive relief should an Ohio court determine that the lethal-injection procedure falls short of the requirements of law. A declaratory-judgment action permits evidentiary discovery and hearings, which would create *329 a thorough record of facts regarding the pain and suffering involved in various methods of execution. And it is a vehicle that is already in use to adjudicate method-of-execution claims. In Ohio, there is the case of Otte v. Strickland, Franklin C.P. No. 08-CY-013337. Baze v. Rees was a declaratory-judgment action originating in Kentucky. Id., 553 U.S. at 46, 128 S.Ct. 1520, 170 L.Ed.2d 420. Many other states have approved, suggested, or used declaratory-judgment actions as a vehicle to litigate constitutional and statutory challenges to methods of execution. See Brown v. Vail (2010), 169 Wash.2d 318, 237 P.3d 263; Ark. Dept. of Corr. v. Williams, 2009 Ark. 523, — S.W.3d —, 2009 WL 4545103; Ex parte Alba (Tex.Crim.App.2008), 256 S.W.3d 682, 686; Smith v. State (Jan. 4, 2010), Mont.Dist. No. BDV-2008-303.
{¶ 51} Under the Ohio Declaratory Judgment Act, “courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed.” R.C. 2721.02(A). The act “provides a means by which parties can eliminate uncertainty regarding their legal rights and obligations.” Mid-Am. Fire & Cas. Co. v. Heasley, 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, ¶ 8. The declaratory-judgment statutes are “remedial and shall be liberally construed and administered.” R.C. 2721.13.
{¶ 52} A declaratory-judgment action would allow the creation of a record on which a court may base its ruling. “An action for a declaratory judgment pursuant to R.C. Chapter 2721 is a civil action,” Sterling Drug, Inc. v. Wickham (1980), 63 Ohio St.2d 16, 21, 17 O.O.3d 10, 406 N.E.2d 1363, and issues of fact “may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the action or proceeding is pending.” R.C. 2721.10. See also Civ.R. 57 (“The procedure for obtaining a declaratory judgment * * * shall be in accordance with these rules”). In Baze v. Rees, the Supreme Court noted that the trial court hearing on Kentucky’s lethal-injection protocol involved “a 7-day bench trial during which the trial court received the testimony of approximately 20 witnesses, including numerous experts.” Id., 553 U.S. at 46, 128 S.Ct. 1520, 170 L.Ed.2d 420.
{¶ 53} For those reasons, I believe that a declaratory-judgment action is the proper avenue in Ohio for litigating Scott’s claims.
{¶ 54} Second, absent a declaratory-judgment action, a writ of mandamus may be available. A writ of mandamus would ensure that the warden fulfills his duty to carry out the death penalty quickly and painlessly under R.C. 2949.22.
{¶ 55} In order to gain entitlement to the writ, the petitioner “must establish a clear legal right to the requested relief, a corresponding clear legal duty on the part of respondents to provide it, and the lack of an adequate remedy in the ordinary course of law.” State ex rel. Gaylor, Inc. v. Goodenow, 125 Ohio St.3d 407, 2010-Ohio-1844, 928 N.E.2d 728, ¶ 15. A petitioner should be granted a *330 forum in which to argue that all of those factors are met. R.C. 2949.22(A) provides that the drug protocol “shall” “quickly and painlessly cause death” and that the warden “shall ensure that the death sentence is executed.” Thus, the statute seems to place an affirmative legal duty upon the warden and to confer a right on the inmate to a quick and painless death. If a declaratory-judgment action is not available, mandamus could be appropriate, because petitioners would have no remedy available at law.
Conclusion
{¶ 56} My opinion today does not address the merit, or lack thereof, of Scott’s substantive arguments concerning lethal injection as a means of carrying out his death sentence. But I would hold that a failure to provide a forum in which Scott’s rights may be contested results in Scott being summarily deprived of those rights.
{¶ 57} For the foregoing reasons I would hold that Scott may challenge his method of execution in a declaratory-judgment action. Accordingly, I dissent.

. In her concurring opinion, Justice O’Connor writes that while R.C. 2949.22(A) “imposes a duty upon the individual administering the lethal-injection protocol * * *, it does not plainly create any right to a quick and painless death.” (Emphasis sic.) ¶ 20 (O’Connor, J., concurring). I disagree. “A duty is the invariable correlative of that legal relation which is most properly called a right or claim.” Hohfeld, Some Fundamental Legal Conceptions as Applied in Judicial Reasoning (1913), 23 Yale L.J. 16, 33. Black’s Law Dictionary defines duty as “[a] legal obligation that is owed or due to another and that needs to be satisfied; an obligation for which somebody else has a corresponding right." (Emphasis added.) Black’s Law Dictionary (9th Ed.2009) 580. See also Marion Cty. Bar Assn. Commt. v. Marion Cty. (1954), 162 Ohio St. 345, 354, 55 O.O. 205, 123 N.E.2d 521, quoting Province of Tarlac v. Gale, 26 Philippine 338, 351 (‘“Wherever there is a duty there is a corresponding right; and whenever a duty is laid upon an official there is another official or person who has the right to enforce the performance of the duty’ ”).
I agree that there are legitimate .concerns as to the appropriate time that a challenge to the lethal-injection protocol might be ripe for adjudication. I do not find that issue relevant to the question asked of us by the federal court. The federal court did not ask us when a challenge based on R.C. 2949.22 to Ohio’s lethal-injection protocol is ripe for adjudication in an Ohio court, but rather whether such a challenge may be made in an Ohio court. In my view, the issue before us concerns the manner, forum, and procedures in which Ohio’s lethal-injection protocol may be challenged in an Ohio court as being inconsistent with the mandate enacted by the General Assembly. I cannot assent to the majority’s determination that no forum or procedures exist in which an Ohio court may interpret the statutory “quick and painless” language included by the General Assembly in R.C. 2949.22, nor can I agree that this issue of interpretation should be left to the federal courts.

. R.C. 2949.22 provides:
“(A) Except as provided in division (C) of this section, a death sentence shall be executed by causing the application to the person, upon whom the sentence was imposed, of a lethal injection of a drug or combination of drugs of sufficient dosage to quickly and painlessly cause death. The application of the drug or combination of drugs shall be continued until the person is dead. The warden of the correctional institution in which the sentence is to be executed or another person selected by the director of rehabilitation and correction shall ensure that the death sentence is executed.” (Emphasis added.)

. I note that Carter has become the seminal opinion as to method-of-execution challenges. This is regrettable, because the sole reasoning in Carter was that the defendant had not cited any cases finding lethal injection to be cruel and unusual; therefore the method was permissible. Despite the lack of analysis in Carter, we have cited its holding, time and time again, to summarily rebuff constitutional challenges to the method of lethal injection. See, e.g., State v. Adams, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 131; State v. Frazier, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 245; State v. Trimble, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, at ¶ 279; State v. Craig, 110 Ohio St.3d 306, 2006-Ohio-4571, 853 N.E.2d 621, at ¶ 126.